**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FISH STIX CHARTER FISHING, LLC, et al., <br><br> Petitioners, <br><br> v. <br><br> MARK CURE, <br><br> Claimant. | Civil Action No. 18-864 (MAS) (DEA) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This suit involves an alleged injury sustained by Mark Cure ("Claimant") in the process of boarding the vessel Fish Stix, owned by Fish Stix Charter Fishing, LLC and Kris Black ("Black") (collectively, "Petitioners"). (Compl. ¶¶ 3–4, ECF No. 1.) Claimant filed an action against Petitioners in New Jersey state court. (*See* Compl. ¶ 4; Morley Cert. ¶ 3, ECF No. 6-1.) Petitioners filed this action seeking exoneration from or limitation of liability pursuant to 46 U.S.C. § 30501 *et seq.* and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure. (Compl. ¶ 1.)

This matter comes before the Court upon Claimant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Summary Judgment. (ECF No. 27.) Petitioners opposed (ECF Nos. 33–35), and Claimant replied (ECF No. 36). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court denies Claimant's Motion.

I.  **BACKGROUND**[1]

This suit involves an alleged injury sustained by Claimant in the process of boarding the vessel Fish Stix, owned by Petitioners and captained by Black. On the day of the alleged injury, Black was assisted by two crew members, Flynn and Fariello. (Claimant's Statement of Material Facts ("SMF") ¶¶ 23, 28, 30–31, ECF No. 27-11; *see* Pet'rs' Resp. to SMF ("RSMF") ¶¶ 23, 28, 30–31, ECF No. 35.) That day, Claimant and three of his friends chartered the Fish Stix for a fishing trip, embarking from the Shark River. (SMF ¶ 34; *see* RSMF ¶ 34; Compl. ¶ 3, ECF No. 1.) The four men walked out onto the dock, approached the Fish Stix, and observed steps bolted to the dock that were used to board the vessel. (SMF ¶¶ 15, 41–42; *see* RSMF ¶¶ 15, 41–42.) Before attempting to board the Fish Stix, Claimant handed his fishing gear to someone on the vessel. (SMF ¶ 44; *see* RSMF ¶ 44.)

Claimant stepped onto the stairs and steadied himself on the shoulder of a friend, intending to step from the top step of the stairs to the cap rail of the Fish Stix, then into the cockpit of the Fish Stix.[2] (SMF ¶¶ 47, 50; *see* RSMF ¶¶ 47, 50.) Claimant then placed his right foot on the cap rail of the Fish Stix. (SMF ¶ 52; *see* RSMF ¶ 52 (disputing that Claimant grasped the hand of Flynn, but not disputing that Claimant's foot was on the cap rail of the Fish Stix); Pet'rs' Opp'n Br. 8 ("[C]laimant had one foot on the vessel when he fell.").) Claimant then lifted his left foot off the top step of the stairs, intending to transfer his left foot to the cap rail. (SMF ¶¶ 53–54; *see* RSMF ¶¶ 53–54 (disputing the cause of the fall, but not appearing to dispute that Claimant had lifted his left foot off the stairs to transition to the cap rail).) While transferring his left foot to join

---

[1] Because Claimant submits a statement of material facts that contains genuinely disputed facts, *see infra* III.B., relevant background information may be disputed by the parties. The Court attempts to include only background information that is not disputed by either party.

[2] A cap rail is the often-wooden railing surrounding the edge of the deck of a boat. (*See* SMF ¶ 42.) The cockpit is the location of the controls.

2

his right foot on the cap rail of the Fish Stix, Claimant fell into the water. (SMF ¶¶ 53–54, 56; *see* RSMF ¶¶ 53–54, 56 (disputing the cause of the fall, but not appearing to dispute that Claimant was transitioning to the cap rail from the stairs when he fell).) Claimant described injuries arising from boarding the Fish Stix and his fall, including "near complete quadriceps tendon rupture" that required surgery to repair. (SMF ¶ 61; *see* RSMF ¶ 61 (denying that Claimant's description of injuries is a material fact).)

Claimant filed an action against Petitioners in New Jersey state court. (*See* Compl. ¶ 4; Morley Cert. ¶ 3, ECF No. 6-1.) Petitioners filed this action seeking exoneration from or limitation of liability pursuant to 46 U.S.C. § 30501 *et seq.* and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure. (Compl. ¶ 1.)

Claimant moves to dismiss this action based on this Court's lack of subject matter jurisdiction, asserting that "[n]egligence in failing to supply a handrail with steps attached to a dock cannot form the basis for a maritime tort." (Claimant's Br. 3, ECF No. 27-12.) Claimant also moves for summary judgment, asserting that Petitioners are not entitled to exoneration or limitation of damages because "Petitioners cannot prove absence of privity or knowledge." (Claimant's Br. 8.)

## II. LEGAL STANDARDS

### A. Subject Matter Jurisdiction

Because federal courts are courts of limited jurisdiction, the party seeking to invoke the Court's jurisdiction bears the burden of proving the existence of subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of a jurisdictional fact). *Gould*

*Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). On a facial attack, the Court considers only the allegations of the complaint and documents referenced therein, construing them in the light most favorable to the plaintiff. *Id.* On a factual attack, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### B.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing the absence of a genuine dispute of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The substantive law identifies what facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (citation omitted).

The Court must consider all facts and their logical inferences in the light most favorable to the nonmoving party. *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter," but rather will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249.

"On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine [dispute] . . . ." D.N.J. Civ. R. 56.1. "A

motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed." *Id.*

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

The district courts have jurisdiction over any "civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). "The admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." 46 U.S.C. § 30101(a).

A "party seeking to invoke federal admiralty jurisdiction . . . must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). For location, a court "must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* For connection with maritime activity, a court "first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce," then "must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (internal quotation marks and citations omitted).

Claimant and Petitioners only substantively discuss the location condition. Claimant characterizes the alleged tort as a failure to provide a handrail on the stairs, arguing that "the negligent configuration of docks and their vertical extensions, including steps, do not satisfy a location test." (Claimant's Br. 3.) Petitioners liken the stairs to a gangway, a means of ingress or egress between a vessel and land, or otherwise argue that Claimant was within navigable water because he "had one foot on the vessel when he fell." (Pet'rs' Opp'n Br. 8.)

1.  **Location**

The Court first addresses whether the alleged tort occurred on navigable water or—if it occurred on land—whether it was caused by a vessel on navigable water. Admiralty jurisdiction "encompasses injuries that occur on the gangway, which is considered an extension of the vessel," but "does not extend to accidents occurring on piers or ramps running into the sea, which are considered extensions of land." *In re CR Bronco, LLC*, No. 09-3036, 2010 WL 3862366, at *2 (D.N.J. Sept. 27, 2010) (citations omitted). A stairway physically connected to a dock, which does not extend out over the water to connect a vessel to the dock, is an extension of land, and is not on navigable water. *See id.* at *3. A vessel, however, moored to a dock but within navigable water, is on navigable water and within admiralty jurisdiction. *See Sisson v. Ruby*, 497 U.S. 358, 363 (1990).

Because the Fish Stix was in the Shark River at the time of the incident, it was a vessel on navigable waters. Claimant suffered his injury after departing the stairs on the dock. Claimant, therefore, had left land behind and entered navigable water when he suffered the injury—either by becoming injured while part of him was only onboard the Fish Stix, or by falling from the Fish Stix into navigable water, which caused the injury. Under either explanation, Claimant departed land and entered navigable water when he stepped off the stairs of the dock.

Claimant's attempt to characterize the tort as one solely occurring on land—by the failure to provide a handrail—does not fail the locality test. Claimant alleges that Petitioners negligently allowed the Fish Stix to drift farther from the dock than reasonable during boarding, which in part caused his injury. (*E.g.*, SMF ¶ 60 ("[Claimant] believes that he fell in the water because of the distance of the boat from the step . . . .").) This would nevertheless amount to an injury caused by a vessel on navigable water. Petitioners, accordingly, meet their burden to demonstrate the location prong for admiralty jurisdiction is satisfied.

## 2. Connection with Maritime Activity

The Court "first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce." *Grubart*, 513 U.S. at 534 (internal quotation marks and citations omitted). The Court "assess[es] the potential disruptive effects that the type of incident involved could have on maritime commerce, not whether the particular incident at hand actually disrupted maritime commerce." *In re Christopher Columbus, LLC*, 872 F.3d 130, 136 (3d Cir. 2017) (internal quotation marks omitted) (quoting *Hargus v. Ferocious and Impetuous, LLC*, 840 F.3d 133, 136 (3d Cir. 2016)). The test turns "on a description of the incident at an intermediate level of possible generality." *Grubart*, 513 U.S. at 538. Here, the incident is an injury to a commercial passenger arising from allegedly unsafe procedures and equipment for boarding a vessel.

Unsafe conditions while docking or at the dock have a potential to disrupt maritime commerce. *Sisson*, 497 U.S. at 362–63 (finding "a fire on a vessel docked at a marina on navigable waters" had potential to disrupt maritime commerce because the fire could have "spread to nearby commercial vessels or ma[d]e the marina inaccessible to such vessels"); *In re Christopher Columbus*, 872 F.3d at 136–37 (finding "an altercation between passengers on a boat in the process of docking has the potential to disrupt maritime commerce" because of, among other things, the potential for injuries to passengers or crew). Here, the Court finds that an injury to a commercial passenger caused by a failure to provide safe means of boarding has a potential to disrupt maritime commerce. An essential activity of maritime commerce is boarding a vessel—maritime commerce cannot begin without it. Whether it be a chartered fishing excursion, whale watching, a cruise, or a three-hour tour, maritime commerce frequently involves passengers boarding a vessel. Maritime commerce is likely to be affected by the regulation of safe boarding procedures for commercial passengers. Accordingly, the first step of the connection prong is satisfied.

Next, the Court "must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534. As discussed above, maritime activity cannot begin without boarding a vessel, therefore, boarding a vessel has a substantial relationship to traditional maritime activity. *See In re Christopher Columbus*, 872 F.3d at 134 (parties conceding that "carrying passengers for hire on a vessel on navigable waters is substantially related to traditional maritime activity"); *In re Complaint of MLC Fishing, Inc.*, No. 08-3056, 2010 WL 582570, at *1–2 (E.D.N.Y. Feb. 16, 2010) (acknowledging that descending a ramp required to reach a vessel, if part of the vessel, has a connection with maritime activity); *Butler v. Am. Trawler Co., Inc.*, 707 F. Supp. 29, 32–33 (D. Me. 1989) (finding boarding a vessel is traditional maritime activity). Accordingly, the second step of the connection test is satisfied.

Petitioners sufficiently invoke admiralty jurisdiction because the alleged tort occurred on navigable water, injuries to commercial passengers arising from allegedly unsafe boarding conditions have the potential to disrupt maritime commerce, and boarding a vessel is a traditional maritime activity. The Court, accordingly, denies Claimant's motion to dismiss for lack of subject matter jurisdiction.

### B. Summary Judgment

"On motions for summary judgment, the movant shall furnish a statement which sets forth *material facts as to which there does not exist a genuine issue*, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." D.N.J. Civ. R. 56.1 (emphasis added).

As a supplement to Claimant's motion, Claimant filed a Statement of "Material Facts in Support of Notice of Motion Seeking Order Granting Summary Judgment Dismissing All Claims Seeking Exoneration or Limitation." (*See generally* SMF.) This statement included "Conflicting

Facts" that the parties disputed. (SMF ¶¶ 72–83.) The Statement of Material Facts in Support does not specify which facts are not in dispute, and several of the enumerated "material facts" are contradicted by the "conflicting facts." (*Compare id.* ¶¶ 52–53 (stating that Claimant held Flynn's hand while boarding the Fish Stix), *with id.* ¶¶ 73–77 (stating that Flynn "never reached for [Claimant's] hand" and was on the other side of the Fish Stix when Claimant fell); *compare id.* ¶ 57 (stating that Claimant fell headfirst into the water), *with id.* ¶¶ 79, 82 (indicating that Claimant fell feetfirst into the water).)

Claimant's Statement of Material Facts is not a "statement of material facts not in dispute" under Local Civil Rule 56.1 because it acknowledges that certain facts are both material and in genuine dispute. Claimant, therefore, cannot meet his burden of showing that there is no genuine dispute as to any material fact.[3] "A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed." D.N.J. Civ. R. 56.1. The Court, accordingly, dismisses Claimant's motion for summary judgment.

## IV. CONCLUSION

The Court denies Claimant's Motion to Dismiss for Lack of Subject Matter Jurisdiction because Petitioners satisfy their burden to invoke admiralty jurisdiction. The Court denies

---

[3] Claimant, instead, asks the Court to look at the cited evidence—such as conflicting eyewitness accounts and expert reports, (*compare* SMF ¶ 57, *with id.* ¶¶ 79, 82; *compare id.* ¶¶ 64–68 (Claimant's expert "opin[ing] that the gap of more than one foot and the absence of a handrail constitutes [a] violation of safety standards"), *with id.* ¶¶ 70–71 (Petitioners' expert stating "that the boarding arrangements present when [Claimant] was injured are typical in his experience and w[ere] safe"))—weigh that evidence, and determine the truth. *See Anderson*, 477 U.S. at 249.

Claimant's Motion for Summary Judgment because Claimant fails to demonstrate there is no dispute of material fact.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**